DENNIS CUNNINGHAM (112910)
BEN ROSENFELD (SBN 203845)
LAW OFFICE OF DENNIS CUNNINGHAM
115 ½ Bartlett Street
San Francisco, CA 94110
Tel:    (415) 285-8091
Fax:   (415) 285-8092
denniscunninghamlaw@gmail.com
ben.rosenfeld@comcast.net

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| The Miles Family: MONIQUE MILES, for herself and as Mother and Guardian of her minor children, Romelle Brown, Ajani Brown, Jordan Brown, and Jayden Brown; and, CHELSEA MILES, PAMELA MILES and ERIN MILES, <br><br> Plaintiffs, <br><br> vs. <br><br> Oakland and San Leandro Police Officers and Supervisors JOHN/JANE DOEs Nos. 1-25; the CITY OF OAKLAND, CALIFORNIA; and the CITY OF SAN LEANDRO, CALIFORNIA, <br><br> Defendants. | No. _____ <br><br> **COMPLAINT FOR VIOLATION OF CIVIL RIGHTS And Other Wrongs** <br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This case arises from an oversized, overly-aggressive, very poorly run combined police action in Oakland, in April, 2013, in which an African-American family—four grown women and four children, aged 15, 10, 5 and 4 years old—were rousted from their home at gunpoint by a large force of uniformed officers who were conducting a raid on a separate household, with a separate address, downstairs; but the plaintiffs were taken and held outdoors in police custody, down the street from their home, while a number of officers—with no warrant

1

or other grounds or authority whatsoever— entered and ransacked their home along with the target house downstairs.

2. Despite the fact that the person apparently being sought on a warrant by this large armed force (who advanced on the house all shouting his name) came outside immediately and surrendered, the plaintiff neighbor family were held there in the cold, with some of the children only partially clothed, for several hours.  During that time it was possible to see through a window that the police were inside their home, upstairs, but none of the officers would respond to their questions about why the police had gone inside or what they were doing.  When they were allowed to return home, they found their house a shambles: closets, drawers, boxes, etc were emptied and contents strewn on the floor, doors were broken, and the place was a mess.

3. The family, all of them, were outraged and traumatized by this ridiculous, unlawful invasion, and by being held like criminals in front of the whole neighborhood, and there have been serious lasting emotional effects on the children, one in particular.  They seek compensation for this gross and heedless violation of their most basic rights.

## JURISDICTION & VENUE

4. This Court has jurisdiction under 42 U.S. Code §§ 1983 *et seq*, and 1988, and Judicial Code, 28 U.S.C. §§ 1331, 1332, 1343, and 1367.  Venue in the Northern District of California is proper because plaintiff and one or more defendants reside in the District, and because the events in controversy occurred in the District.

## PARTIES

5. **Plaintiffs:**  Plaintiff MONIQUE MILES is a U.S. citizen, resident of Oakland, and mother of minor children Romelle Brown (15), Ajani Brown (10), Jordan Brown (5), and Jayden Brown (4), and of CHELSEA MILES, who is grown, and was 7-8 months pregnant at the time. Chelsea Miles and PAM MILES, mother of Monique Miles, also live in the house and were present at the time of the incident, along with ERIN MILES, Monique's cousin.  All of them, four Miles women and four Brown children, were removed from the home and held in custody by the defendants, as aforesaid.

2

6. **Defendants:**   Plaintiffs are informed and believe that the Oakland Police were in command of the operation and San Leandro personnel were there in support.  Defendants JOHN/JANE DOEs Nos.1-25 are natural persons and members of the Oakland and San Leandro Police Departments whose names are unknown and will be substituted when they become known. They include sworn Oakland and San Leandro police officers and supervisors who planned, supervised, and participated in the raid, including six or seven San Leandro officers who approached the house with long guns pointed at plaintiff Pamela Miles as she sat on the porch with a neighbor at the outset of the raid.  Collectively, these John/Jane Doe defendants are also referred to a the Individual Defendants.

7. At all relevant times, the individual defendants, and each of them, worked and/or resided within the Northern District of California, and were acting under color of state law, within the course and scope of their duties as peace officers.

8. The City of Oakland is a municipal entity incorporated under the Laws of the State of California.

9. The City of San Leandro is a municipal entity incorporated under the Laws of the State of California.

**STATEMENT OF FACTS**
**(Common to All Causes of Action)**

10. On or about the evening of April 24, 2013, plaintiff Monique Miles was at home, in Apartment No. 19 at 1485 E. 22nd Street, in Oakland, California, with her children and other family members, including her four young children, **Romelle Brown, Ajani Brown, Jordan Brown and Jayden Brown**; her grown daughter, **Chelsea Miles**; and her mother, **Pamela Miles**. Monique's cousin, **Erin Miles**, was also present, visiting.

11. At or about 6:30 p.m. that day a large number of police officers approached the house. The building is set on a hillside, and the front entrance downstairs is at the bottom of a set of stairs which lead up to what was then the plaintiffs' apartment—visibly and obviously a separate premises.

12. As the police first approached, several of them were shouting out the name of a man they had apparently come to apprehend, who promptly emerged from the downstairs dwelling and was taken into custody.

13. At or about the same time, a group of officers carrying carbines, shotguns and/or rifles, approached the building where plaintiff Pamela Miles and a neighbor were sitting outside talking. These five or six officers, apparently defendant members of the San Leandro Police Department participating in the raid by way of Mutual Aid to the Oakland Police, pointed their long guns at plaintiff and her companion as they sat talking, and ordered them to go inside.

14. Moments later, however, there was loud pounding on the door, and another group of officers, also with guns in their hands, pushed inside, and immediately and loudly ordered everyone out of the house. The protests of the adult plaintiffs, Ms. Monique Miles in particular, were ignored by the officers. The entire family group, four adults, including Chelsea Miles who was in a wheelchair, and four children—including two who were very young and in nightclothes—were impatiently hustled out the door and down the stairs by the squad of officers, then escorted down the sidewalk to a corner a half a block away, down the hill.

15. Plaintiff Romelle Brown, then aged 15, was taken out first, grabbed by the arm and marched down the hill. At the corner, officers placed him inside a police car. Questions and protests from his mother Monique Miles, when she reached the corner and saw her son held inside the police car, were met with shrugs, evasions and stony silence. But officers did finally release Romelle from the car, to wait with the rest of the family. Entreaties about why they were being held there, when they could go back, why they couldn't go in and get warm clothes for the children, or go to a relative's house nearby, etc, were similarly ignored by OPD and SLPD officers. After a time, plaintiffs could see through a window that officers were moving about inside their apartment, upstairs; but questions about this were also stonewalled by the defendant officers, including those of rank.

16. Plaintiffs were held this way—simply standing on the sidewalk in the chilly evening air—for some three hours, guarded by studiously taciturn officers. Then an order was given, and—with no explanation of the reason for their actions—the police left.

17. When the family went back inside their apartment, they found it a complete shambles, throughout. Closet doors were broken and broken off, and the contents pulled out and spread on the floor. Cabinets and bureau drawers were emptied onto the floor, shelves were cleared, furniture was turned over; any kind of mess and disruption which could have been made was made, and many items of property were ruined.

18. Some time later, Ms. Miles got in touch with the SLPD by calling the number on a card an officer had given her when he left. Through this contact, the family was eventually reimbursed for the cost of repairing the closet doors. Otherwise no compensation or explanation was ever made or offered by any of the defendant officers or their departments.

19. All the plaintiffs, a year and a half later and more, remain traumatized—and the adults are obviously still incensed—by this preposterous, baseless, callous and illegal raid, ouster and detention, in flagrant violation of their basic rights. Romelle Brown, in particular, was impacted by the experience; he has been very pre-occupied and un-communicative since, and withdrawn, and his schoolwork has suffered substantially. The effects on the younger children are unfathomable, or course, and likely to last for many years if not a lifetime.

### PLAINTIFFS' CAUSES OF ACTION

**ONE:** 42 U.S.C. § 1983 (Fourth Amendment)
Unreasonable and Unlawful Search and Seizure
All Plaintiffs vs. All Defendants

20. Plaintiffs incorporate by reference each of the above paragraphs as if fully set forth here again.

21. Plaintiffs and each of the complain against the defendants for violation of their civil rights, in the police actions described above, under the Fourth Amendment to the U.S. Constitution, by operation of the federal Civil Rights Act (42 U.S.C. § 1983 et seq.), and that they suffered emotional and pecuniary damages and losses as a result, entitling them to judgment against defendants.

22. Defendants City of Oakland and City of San Leandro are liable for maintaining one or more unconstitutional policies, practices, or customs, and/or for acquiescing in the heedless raid

and detentions of plaintiffs described herein, and thereby substantially causing the deprivations of plaintiffs' Fourth Amendment rights, per the law of *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978) and its progeny.

**TWO:** 42 U.S.C. § 1983 (Fourteenth Amendment)
Deprivation of Equal Protection
All Plaintiffs vs. All Defendants

23. Plaintiffs incorporate by reference each of the above paragraphs as if fully set forth here again.

24. Plaintiffs likewise complain that the defendants in the above-described police actions violated their civil rights under the Fourteenth Amendment to the U.S. Constitution, by operation of the federal Civil Rights Acts (42 U.S.C. § 1983 et seq.), by denying them Equal Protection of the Laws, Privileges, and Immunities afforded to all citizens, and that they suffered emotional and pecuniary damages and losses as a result, further entitling them to judgment against defendants.

25. Defendants City of Oakland and City of San Leandro are liable for maintaining one or more unconstitutional policies, practices, or customs, and/or for acquiescing in the heedless raid and detentions of plaintiffs described herein, and thereby substantially causing the deprivations of plaintiffs' Fourteenth Amendment rights, per the law of *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978) and its progeny.

**THREE:** 42 U.S.C. § 1981
Deprivation of Equal Benefit of the Laws
All Plaintiffs vs. All Defendants

26. Plaintiffs incorporate by reference each of the above paragraphs as if fully set forth here again.

27. Plaintiffs likewise complain that the above-described police actions violated their rights, as Black or African-American persons, "to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens," as safeguarded under 42 U.S.C § 1981, and that they suffered emotional and pecuniary damages and losses as a result, further entitling them to judgment against defendants.

28. Defendants City of Oakland and City of San Leandro are liable for maintaining one or more unconstitutional policies, practices, or customs, and/or for acquiescing in the heedless raid and detentions of plaintiffs described herein, and thereby substantially causing the deprivations of plaintiffs' rights secured under 42 U.S.C § 1981 under the law of *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978) and its progeny.

**FOUR:** 42 U.S.C. § 1985
Civil Conspiracy and Coverup
All Plaintiffs vs. The Individual Defendants

29. Plaintiffs incorporate by reference each of the above paragraphs as if fully set forth here again.

30. Plaintiffs further allege that the Individual Defendants, and each of them, conspired with one another, by way of one or more explicit and/or tacit agreements, to cause the afore-described deprivations of plaintiffs' Constitutional and civil rights, to coverup the true facts and circumstances of this incident, and thereby to encumber defendants access to justice and redress, amounting to a further and separate violation of plaintiffs' rights to procedural and substantive due process under the Fourteenth Amendment to the U.S. Constitution, secured to plaintiffs by operation of the Federal Civil Rights Acts (42 U.S.C. §§ 1983 et seq.).

31. Defendants, and each of them, had a meeting of the minds, whereby they agreed, explicitly and or tacitly, to pursue and accomplish the deprivations of plaintiffs' rights as described above, each one playing his/her part in the conspiracy and taking one or more substantial step toward its ends, including the coverup of the true facts of the incident.

**PRAYER**

32. **WHEREFORE**, plaintiffs, and each of them, seek and demand (1) monetary relief and judgment against defendants, jointly and severally, including nominal, presumed, compensatory, and punitive damages, in such amounts as shall be determined by a Jury; (2) Attorneys Fees under 42 U.S.C. § 1988; (3) costs of litigation; and (4) such other and further relief as is just and appropriate in the premises of this Civil Rights case.

# JURY DEMAND

33.  Plaintiffs request and demand trial by jury as to each and every cause of action and factual allegation contained herein.

DATED: April 21, 2015.                    Respectfully submitted,

*/s/ - Dennis Cunningham*
Dennis Cunningham
Ben Rosenfeld
Attorneys for Plaintiff